Argued and submitted January 14, judgment in CA A93979 reversed and remanded; judgment in CA A93745 affirmed November 4, 1998

Frank J. ELLIS
and David J. Fiore,
*Appellants,*

*v.*

OREGON DEPARTMENT OF EDUCATION,
*Respondent.*

(95C13750; CA A93745 (Control))

Frank J. ELLIS,
David J. Fiore, and Vernon Frost,
*Appellants,*

*v.*

Terry RAHMSDORFF,
Bill Chase, Sue Hillesland, John Hopper,
Jan Lachapelle, Roy Silfven, and William Worrell,
in their official and individual capacities,
and Bend-Lapine Administrative School District No. 1,
*Respondents,*

STATE OF OREGON,
by and through its
Department of Education,
*Intervenor-Respondent.*

(95CV0536MS; CA A93979)
(Cases Consolidated)

967 P2d 912

Monica A. Smith and Paul B. Gamson argued the cause for appellants. With them on the briefs was Smith, Gamson, Diamond & Olney.

Michael D. Reynolds, Assistant Solicitor General, argued the cause for respondent Oregon Department of Education and intervenor-respondent State of Oregon. With him on the brief were Hardy Myers, Attorney General, and Virginia L. Linder, Solicitor General.

Donna M. Cameron and Miller, Nash, Wiener, Hager & Carlsen filed the brief for respondents Terry Rahmsdorff, Bill Chase, Sue Hillesland, John Hopper, Jan LaChapelle, Roy Silfven, and William Worrell.

Neil R. Bryant argued the cause for respondent Bend-LaPine Administrative School District No. 1. With him on the brief were John D. Sorlie and Bryant, Lovlien & Jarvis.

Before Landau, Presiding Judge, and Deits, Chief Judge,* and Armstrong, Judge.

LANDAU, P. J.

---

* Deits, C. J., *vice* Riggs, J., resigned.

**LANDAU, P. J.**

At issue in these two consolidated cases is the lawfulness of the registration and funding of the Bend Community School (BCS) as a private "alternative" education program. In the first case (CA A93745), filed in Marion County, plaintiffs Ellis and Fiore seek judicial review of a final order of the Oregon Department of Education (DOE) approving an application of BCS to register as a private alternative education program and declaring BCS to be eligible to receive public funds. In the second case (CA A93979), filed in Deschutes County, plaintiffs Ellis, Fiore, and Frost seek a declaratory judgment to the effect that the Bend-La Pine Administrative School District No. 1 (District) and individually named school board members violated various statutory and constitutional provisions in funding BCS with public money. In the Deschutes County case, plaintiffs also ask for injunctive relief halting further public funding of BCS and an order requiring the reimbursement of public funds already paid to BCS. DOE intervened in that case as a defendant.

Plaintiffs in both cases filed motions for summary judgment. Defendants filed cross-motions for summary judgment. The motions in both cases were set before the same Marion County judge who sat pro tempore in Deschutes County. The trial court allowed defendants' motions. In the Marion County action for judicial review, the court concluded that DOE properly approved the BCS application for registration as an alternative education program. In the Deschutes County action, the court concluded that the District and the individually named board members were authorized to fund BCS with public funds. The trial court entered judgments in both cases dismissing all claims. Plaintiffs in both cases appealed, and we consolidated the two cases for the purposes of the appeal.

As to the Marion County action for judicial review of the DOE order approving the application for registration, we conclude that the trial court did not err in affirming the DOE order. As to the Deschutes County action for declaratory and injunctive relief, we conclude that the trial court erred in granting summary judgment to defendants, because the

undisputed facts show that defendants failed to satisfy statutory conditions for paying public funds to private alternative education programs. As to the Marion County action, therefore, we affirm, and as to the Deschutes County action, we reverse and remand for further proceedings.

## I. FACTUAL BACKGROUND

The relevant facts are not in dispute. Sometime before 1995, the District adopted an "alternative education" policy as part of its disciplinary rules. Under the terms of that policy, students with disciplinary and similar problems could be referred to alternative programs, including private programs, if the District determined that students needed such programs.

In early 1995, a number of Bend-area parents of middle school students organized BCS as a private, non-profit corporation. Those parents believed that existing public school education programs did not provide adequate education for their children. In 1995, BCS proposed to the District that BCS operate a private school funded by the District as an alternative education program. Specifically, it proposed that the District provide BCS a room to accommodate 30 students, pay BCS $4,000 per student, and give BCS access to the District's athletic and fine arts programs. BCS representatives met with members of the school board and representatives of DOE, all of whom encouraged the parents to pursue the BCS proposal. The original BCS representatives thereafter met with other parents of middle school students and ultimately developed a list of 41 students who wished to enroll in BCS. The District played no role in recruiting or selecting those students. So far as the record shows, the only selection criteria were student and parental interest and agreement to participate.

In response to the BCS proposal, the District amended its alternative education program policy, first in May 1995 and later in August of the same year. Among other things, the amended policy provided that the goals for the alternative program "must take into account evidence of sufficient need among students, staff, parents, and other public stakeholders to warrant establishment of the alternative

education program" and that "[s]tudents selected for an alternative program will be evaluated by district and alternative program staff and the student's parents for acceptance according to the student selection criteria approved by the School Board."

In June, after the adoption of the first version of the policy, the District's staff evaluated the BCS proposal and identified a number of problems. Among other things, it noted that the BCS request for referral of all 41 interested students was not consistent with the District's procedures or the board's policies. It argued that the District "cannot accept [the] parent[s'] request as the only student evaluation criteria [*sic*]." It also concluded that there was no evidence that any of the 41 students was failing to benefit from the regular course of study and added that students who were having problems had a greater need for the District's scarce alternative education resources.

On June 16, 1995, after an extensive discussion with BCS representatives, the board decided to proceed "as a partner with the Bend Community School for one year, with details to be worked out by the administration and reported to the Board." The board member who made the motion explained that the alternative education program policy was a "living document" that had details that needed to be worked out in order to identify areas of policy that could be changed. The board also agreed to waive the District's policy for the 41 students specifically chosen for the BCS program, who were not selected in the way that the District's policy required.

In mid-August 1995, BCS began its first school year. At the end of the month, it applied to the DOE for registration as a private alternative school. DOE approval came on October 9, 1995, in a letter from C. Gregory McMurdo, Deputy Superintendent of Public Instruction:

"Your 1995-96 application for registration of a private alternative education program pursuant to ORS 339.620 and OAR 581-21-072 has been processed. The following criteria, required by OAR 581-21-072 for registration, was provided and is in compliance:

"(a)  Program name, mailing address and telephone number
"(b)  Name of Administrator
"(c)  List of staff and their certification, if any
"(d)  Statement of philosophy
"(e)  Grades, age levels, and special needs to be served by program
"(f)  Statement of compliance with OAR 581-21-045
"(g)  Documentation of compliance to fire, health, and safety regulations
"(h)  Documentation of evaluation by local school districts[.]

"Results of the above review indicate Bend Community School is eligible to receive public school funds for education programs delivered to eligible students developed or contracted during the 1995-96 school year."

The next day, BCS and the District signed an agreement under which the District agreed to pay BCS 80 percent of its current average operating expenses for each student who attended BCS. The District made the first payment on October 24, 1995, and it made two more payments after that to cover the balance of the school year.

## II. REVIEW OF THE PARTIES' CLAIMS ON THE MERITS

### A.  The Marion County Action

With that background in mind, we turn to the specific claims raised in each of the two actions that are before us. In the Marion County action, plaintiffs request judicial review of the October 9, 1995, McMurdo letter as an order in other than a contested case. ORS 183.484. The complaint alleged that the order unlawfully approved the BCS application without requiring proof of all the elements required by DOE regulations governing approval of alternative education programs. In their motion for summary judgment, plaintiffs more specifically contended that DOE (1) failed to require a statement of compliance with regulations that prohibit various forms of discrimination and (2) failed to require proof of compliance with applicable fire, health, and safety regulations.

In response to the summary judgment motion, DOE offered evidence in support of its contention that it complied with the applicable approval criteria in both respects. First, concerning the nondiscrimination statement, DOE offered evidence that, because of a DOE oversight, the application form that BCS used did not contain an express certification of nondiscrimination. The application itself, however, contained a warning that noncompliance with nondiscrimination regulations could lead to revocation of registration:

"A program or school found to be in noncompliance with * * * OAR 581-21-045 shall be removed from the Department of Education's list of registered private alternative education programs."

Leon Fuhrman, the DOE official who reviewed the application, told the BCS representative who submitted it that signing the application with that warning constituted the required certification, and the BCS representative understood that that was the effect of her signature. Plaintiffs did not offer contradictory evidence.

Second, concerning compliance with fire, health, and safety regulations, DOE offered evidence that it relied on county building reports and Fuhrman's independent inspection of the premises to determine compliance with fire and safety rules. DOE also offered evidence that Fuhrman found compliance with health regulations because BCS did not intend to provide food service for students, which is the primary focus of DOE's concern in that regard. Plaintiffs did not offer contradictory evidence.

On appeal, plaintiffs contend that the trial court erred in concluding that, on the foregoing evidence, DOE correctly concluded that the BCS application satisfied the requirements of the applicable rule. Plaintiffs cast their challenge in terms of a lack of substantial evidence to support DOE's findings that BCS satisfied the application requirements. Unfortunately, plaintiffs do not explain precisely why the evidence is insufficient. Concerning compliance with state nondiscrimination regulations, plaintiffs say only that the warning on the application that BCS acknowledged by signature cannot suffice, because it "is a DOE warning, not a statement by the applicant." Concerning compliance with fire, health, and

safety regulations, plaintiffs complain about Fuhrman's reliance on city and county inspections, but they do not address the fact that he testified that he also independently inspected the premises for compliance with fire and safety regulations.

DOE argues that there is evidence in the record from which it reasonably may be concluded that BCS satisfied both criteria. In the alternative, DOE argues that, even if BCS failed to submit an application that completely satisfied each of the requirements of the rule, it does not necessarily follow that the application had to be rejected. According to DOE, the rule only states what applicants should include in their applications and does not state a limitation on the authority of the agency to approve applications.

The version of the administrative rule in effect at the time DOE approved the registration of BCS provided:

> "The registration form for alternative programs shall include:
>
> "* * * * *
>
> "(f)   Statement of compliance with OAR 581-21-045;
>
> "(g)   Documentation that the facilities used by the alternative program comply with the applicable fire, health, and safety regulations* * *."

OAR 581-21-072 (1995). The administrative rule referred to prohibits discrimination

> "in any public elementary or secondary school, educational program or service, or interschool activity where the program, service, school, or activity is financed in whole or part by monies appropriated by the Legislative Assembly."

OAR 581-021-045(2).

■      Plaintiffs' challenges to DOE's "findings" that the BCS application complied with the regulatory application requirements are couched in substantial evidence terms. Plaintiffs contend that what BCS submitted cannot reasonably be characterized as a "statement." We disagree. The application form plainly states that compliance with the non-discrimination rule is required and that continued funding depends on continued compliance with the rule. Fuhrman

explained to BCS that by signing the application form BCS indicated its agreement to comply with the nondiscrimination rule, and BCS understood its signed submission to have that effect. The application thus, in substance, constituted a statement of compliance. An explicit title or heading—"statement of compliance"—perhaps could have made matters clearer, but we conclude that it was not unreasonable for DOE to accept the signed application as a satisfactory statement without such a title or heading.

Plaintiffs contend that DOE approved the BCS application without adequate documentation that the facilities to be used complied with applicable fire, health, and safety regulations. DOE relied on city and county inspection reports and on its own inspection of the premises. We find nothing unreasonable in DOE's reliance on those sources of information.

Plaintiffs assert no other ground for reversing the trial court's judgment affirming the DOE order accepting the BCS application to register as a private alternative education program. We therefore conclude that the trial court did not err in affirming the DOE order.

## B.   The Deschutes County Action

In the Deschutes County action, plaintiffs request a declaration that the District and the individual board members, in essence, unlawfully have funded a private school with public funds. In their motion for summary judgment, plaintiffs argued more specifically that the District's decision to fund BCS (1) did not comply with the District's alternative education program policy in a variety of respects; (2) did not comply with ORS 336.635, which establishes criteria for the approval of alternative education programs; and (3) amounted to an unconstitutional decision to fund private education with public funds.

On appeal, plaintiffs make the same arguments in support of their contention that the trial court erred in allowing the District's and the individual board members' motions for summary judgment and in denying plaintiffs' own motion. During the pendency of the appeal, the legislature amended

ORS 336.635 and made the amendments retroactive to alternative education programs in which students were enrolled on or after July 1, 1995, thus including BCS. Plaintiffs contend that the District did not comply with the requirements of the amended statute either. The District and the individually named board members contend that (1) the District waived compliance with its own rules; (2) the District fully complied with the applicable statutes, as amended; and (3) the public funding of private alternative education programs is entirely constitutional. Intervenor DOE makes essentially the same arguments as the District and the board members.

We address only plaintiffs' contention that the District failed to comply with ORS 336.635 in deciding to fund BCS, because that contention is dispositive. Whether the District complied with the statute poses a question of statutory construction. We review the trial court's decision with respect to that question as a matter of law, looking first and foremost to the text and context, which includes the current text of the statute, earlier versions of that text, and other sections on the same or similar matters. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993); *see also Krieger v. Just*, 319 Or 328, 336, 876 P2d 754 (1994); *Odneal v. Arlint*, 142 Or App 106, 110, 919 P2d 508, *rev den* 324 P2d 176 (1996).

The statutory authority for the registration and operation of alternative education programs is set out in ORS 336.615 through ORS 336.665. An "alternative education program" is

"a school or separate class group designed to assist students to achieve the goals of the curriculum in a manner consistent with their learning styles and needs."

ORS 336.615. The goals of alternative education programs are to "maintain learning situations that are flexible with regard to environment, time, structure and pedagogy." ORS 336.625(1).

The statutes describe a procedure for placing students in alternative education programs, including an enumeration of criteria that students are required to satisfy to

participate in the programs. Before 1997, the statutes—then codified at ORS chapter 339—expressly tied participation to disciplinary problems. ORS 339.250(9) (1995) required a district to propose an alternative education program to a student when the student was expelled, posed a severe disciplinary problem, or exhibited an attendance pattern "so erratic that the student is not benefitting from the educational program[.]" ORS 336.635(1) (1995) then provided:

> "Pursuant to the proposal required in ORS 339.250(9)(a) to (c), the parent or guardian with the approval of the attending district may enroll the student in one of the proposed appropriate and accessible public alternative programs or the private alternative programs of instruction or instruction combined with counseling registered with the Department of Education. * * * The student enrolled pursuant to this subsection shall be considered enrolled in the schools of the district for purposes of the distribution of the State School Fund."

The 1995 version of the statute thus stated three conditions to placing a student in an alternative education program: (1) the placement must be pursuant to the disciplinary proposal required in ORS 339.250(9) (1995); (2) the parent or guardian must enroll the student in the alternative education program; and (3) the district must approve the enrollment.

In 1997, the legislature amended ORS 369.635 (1995) to change the criteria for students who are eligible for alternative education programs. The amended statute now provides, in pertinent part, with deletions in italics and additions in boldface:

> "[*Pursuant to the proposal under ORS 339.250(9)(a) to* * * *] **When necessary to meet a student's educational needs and interests**, the parent or guardian with the approval of the attending district may enroll the student in one of the proposed appropriate and accessible public alternative programs or the private alternative programs of instruction or instruction combined with counseling registered with the Department of Education. * * * [*The student enrolled pursuant to this subsection shall be considered enrolled in the schools of the district for purposes of the distribution of the State School Fund.*] **A student enrolled**

**pursuant to this subsection or enrolled in an alternative program on or after July 1, 1995, because the student's educational needs and interests are best met through participation in such a program shall be considered enrolled in the schools of the district for purposes of the distribution of the State School Fund."**

Or Laws 1997, ch 164, § 1. The bill containing the amendments also contained an emergency clause, Or Laws 1997, ch 164, § 3, and further provided that the amendments apply

"to any alternative education program as defined in ORS 336.615 in which a student is enrolled on or after July 1, 1995, because the student's educational needs and interests are best met through participation in such a program."

Or Laws 1997, ch 164, § 2. Thus, the 1997 amendments deleted the reference to the disciplinary program as a criterion of eligibility and, in its place, inserted the less specific condition that participation in an alternative education program be "necessary to meet a student's educational needs and interests," and made those changes applicable to BCS, which enrolled its students after July 1, 1995.

■       During the same legislative session, the legislature separately amended other provisions of the statutes related to alternative education programs. Especially pertinent is the legislature's creation of a new section, ORS 336.631, which concerns the placement of students in alternative education programs and their evaluation. ORS 336.631(2) provides:

"Prior to placement of a student in a private alternative program, the resident district shall determine whether the proposed placement best serves the student's educational needs and interests within the district and state academic standards."

The arguments of the parties with respect to the foregoing statutes center on the question whether the new language in ORS 336.635(1), that an alternative education program be "necessary to meet a student's educational needs and interests," imposes any obligation on the District to make the determination of necessity. The District argues that the statute imposes no obligation on it at all, that the

legislature "has conclusively stated that all alternative education programs having enrolled students after July 1, 1995, are presumptively authorized by statute." Plaintiffs argue that the District fails to give meaning to the language of the section that requires that alternative education programs be "necessary." We agree with plaintiffs.

To begin with, the language of the statute supports plaintiffs' interpretation. ORS 336.635(1) requires that, to enroll a student in an alternative education program, it must be "necessary to meet a student's educational needs and interests." Nothing in the language of the statute evinces an intention to permit parents simply to self-select alternative education programs; were that the case, the statute would not require proof of *necessity* to meet a student's educational needs and interests.

To the contrary, the statute has always required districts to determine eligibility. Under the version of the statute before the 1997 amendments, students could enroll in alternative education programs only pursuant to a disciplinary plan prepared and proposed by the District. Under the current version of the statute, the disciplinary plan no longer is required, but a determination of necessity to meet a student's educational needs and interests is required. Thus, the statute changed eligibility criteria, but it did not altogether remove the requirement that the districts determine eligibility.

That reading of the language of ORS 336.635(1) is confirmed by reference to ORS 336.631(2), which specifically refers to the districts' obligation to "determine whether the proposed placement [in an alternative education program] best serves the student's educational needs and interests." To be sure, when the legislature enacted what is now codified at ORS 336.631(2), it did not make the new statute applicable to programs in which students were enrolled by July 1, 1995. Arguably, in a technical sense, the statute may not directly apply. But it is at the least contextual evidence of the manner in which the legislature—the same legislature that enacted what is now ORS 336.635(1)—intended the relevant statutes to be construed.

There remains the question whether the District complied with the statute in this case. That matter may be easily disposed of. The record is undisputed that the District made no attempt to determine whether placement of the 41 students at BCS was necessary for their educational needs and interests. The parents selected the students, and the District paid for all those selected without any further evaluation.

Because the District did not undertake the evaluation of necessity that ORS 336.635(1) requires, we conclude that the trial court erred in allowing the summary judgment motions of the District and the individual board members. Because we reverse on that statutory ground, we need not address plaintiffs' other contentions.

Judgment in CA A93979 reversed and remanded; judgment in CA A93745 affirmed.